IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| ANTONIO MARQUEZ HICKS | § | |
| --- | --- | --- |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-08-CV-1839-N-BD |
| RICK THALER, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Antonio Marquez Hicks, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

A Dallas County grand jury charged petitioner with the armed robbery of Aamir Masih, the cashier at a One Stop convenience store in Garland, Texas. Following a jury trial, petitioner was found guilty of aggravated robbery with a deadly weapon as alleged in the indictment. Punishment, enhanced by a prior felony conviction, was assessed at life imprisonment. His conviction and sentence were affirmed on direct appeal. *Hicks v. State*, No. 05-05-0645-CR, 2006 WL 3479909 (Tex. App.--Dallas, Dec. 4, 2006, pet. ref'd). Petitioner also filed an application for state post-conviction relief. The application was denied without written order on the findings of the trial court. *Ex parte Hicks*, WR-70,099-01 (Tex. Crim. App. Jun. 25, 2008). Petitioner then filed this action in federal district court.

II.

In 17 grounds for relief, petitioner contends that he received ineffective assistance of counsel at trial and on appeal. As best the court can decipher these claims, petitioner appears to allege that counsel: (1) failed to challenge his arrest and the search of his residence; (2) did not move to suppress an impermissibly suggestive photo line-up and a tainted in-court identification; (3) failed to object to the suppression of evidence and an improper jury argument by the prosecutor; (4) did not present expert testimony on the issue of eyewitness identification; (5) did not object to the lack of notice by the prosecutor of his intent to introduce extraneous offense evidence, or request a contemporaneous limiting instruction when such evidence was admitted at trial; (6) allowed the prosecutor to use perjured testimony; (7) permitted a firearms expert to base her testimony on an improper methodology; (8) did not object to a variance between the indictment and the jury charge; and (9) failed to raise certain issues on direct appeal. Petitioner also claims that the cumulative effect of these errors deprived him of a fair trial.[1]

A.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in

---

[1] In view of the number of claims raised by petitioner, many of which are poorly briefed, the court appointed the Federal Public Defender to represent him, and instructed counsel to file an amended writ of habeas corpus "focusing on one or, at most, a few strong arguments, rather than [ ] advancing every conceivable ground of error." *See* Order, 10/31/08 at 2 n.1, *quoting Jones v. Barnes*, 463 U.S. 745, 752-53, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983). When counsel filed a 25-page amended writ containing only five of the 17 grounds raised by petitioner in his original *pro se* writ, petitioner objected and filed a motion to discharge his appointed lawyer. The court granted the motion, reinstated petitioner's original *pro se* writ, and allowed him to file a supporting brief not to exceed 25-pages in length. *See* Order, 3/24/09, *citing* N.D.Tex. LCivR 7.2(c). Petitioner's motion for leave to file a 110-page brief was denied. *See* Orders, 10/31/08 & 3/9/09.

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067.

Where, as here, a state court has already rejected a claim of ineffective assistance of counsel, a federal court may grant habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1); *see also Threadgill v. Quarterman*, No. 3-05-CV-2217-D, 2009 WL 2448499 at *5 (N.D. Tex. Aug. 10, 2009) (citing cases) (holding that both prongs of the *Strickland* test present a mixed question of law and fact that is reviewed under section 2254(d)(1)). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000). A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523; *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). Factual determinations made by the state court are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Threadgill*, 2009 WL 2448499 at *5 (citing cases). This presumption applies not only to explicit findings of fact, but "it also applies to those unarticulated findings which are necessary to the state

court's conclusions of mixed law and fact." *Threadgill*, 2009 WL 2448499 at *5, *quoting Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001), *cert. denied*, 123 S.Ct. 106 (2002).

On federal habeas review, the district court reviews "only the ultimate decision of the state court, and not the specific contents of its reasoning or opinion." *Blanton v. Quarterman*, 543 F.3d 230, 236 (5th Cir. 2008), *cert. denied*, 129 S.Ct. 2383 (2009). When the Texas Court of Criminal Appeals denies post-conviction relief without written order on findings of the trial court, the federal habeas court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Threadgill*, 2009 WL 2448499 at *5, *quoting Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1156 (2004).

B.

Petitioner criticizes trial counsel for failing to challenge his arrest and the search of his residence on Fourth Amendment grounds. At trial, Dallas Police Officer S.L. Slayton testified that petitioner was arrested on two outstanding ticket warrants. (*See* SF-V at 56-57 & St. Exh. 42). There is no evidence that those warrants were issued as a pretext to further the robbery investigation or were otherwise invalid. Although petitioner claims that his arrest was based on the "coerced and false statements" of his roommate, Kendrick Johnson,[2] and that his attorney should have raised that issue at trial, petitioner has failed to prove that he received ineffective assistance of counsel. In his written statement, Johnson told the police that a rifle found in his apartment belonged to petitioner, who admitted to shooting a man at an Auto Zone store about three weeks earlier. (*See* SF-IV at 166-67 & St. Exh. 35A). When Johnson testified at trial, he said that he only signed the statement

---

[2] To the extent petitioner argues that these "coerced and false statements" render the evidence insufficient to support his conviction, his claim is procedurally barred from federal habeas review because it was not raised on direct appeal. *See Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994).

because he felt pressured by the police. (*See* SF-IV at 144, 146-47). Other than Johnson's trial testimony, which was considered and rejected by the jury, there is absolutely no evidence that his original statement to the police was coerced or false. With respect to the search, the evidence shows that Johnson voluntarily signed a consent form allowing the police to search his apartment because "I didn't think, you know, nothing was wrong." (*See* SF-IV at 141-42, 147). As a co-tenant, Johnson had authority to give consent to search the premises. *See United States v. Richard*, 994 F.2d 244, 250 (5th Cir. 1993) ("A third party can consent to a search if [he] has 'common authority' over the premises."). Counsel was not ineffective for failing to make these meritless objections. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.), *cert. denied*, 115 S.Ct. 432 (1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

C.

Next, petitioner argues that his attorney was ineffective for failing to object to an impermissibly suggestive photo line-up and a tainted in-court identification. The court initially observes that there was nothing improper about the photo array shown to Daniel Spencer Hall, the manager of an Auto Zone store that was robbed eight days before the One Stop robbery for which petitioner was on trial. At trial, Hall testified that he was shown six photographs of African-American males who matched the physical description of the suspect he gave to the police. (*See* SF-IV at 78-79). All the men pictured in the photographs looked similar in terms of appearance and age, and all wore civilian clothing. (*Id.* at 96-97 & St. Exh. 36a-f). Hall said that he was "70 percent" sure that the person he identified from the photo array was the Auto Zone robber. (*See* SF-IV at 81-82). There was nothing unduly suggestive or otherwise improper about this procedure. *See Peters v. Whitley*, 942 F.2d 937, 939 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 1220 (1992) (pretrial identification procedures are constitutional unless the identification was so unnecessarily suggestive

as to give rise to a substantial likelihood of misidentification); *Davis v. Thaler*, No. 4-09-CV-434-A, 2010 WL 549787 at *3-4 (N.D. Tex. Feb. 16, 2010), *appeal filed*, Jun. 7, 2010 (No. 10-10593) (photo array of six African-American males of similar age and build with similar characteristics and appearance was not unduly suggestive). Having determined that the photo line-up was not impermissibly suggestive, petitioner cannot show that the line-up tainted the in-court identification testimony of Hall and two witnesses to the One Stop robbery -- Cornell Cooper and Aleo Guerra.[3] *Cf. Neil v. Biggers*, 409 U.S. 188, 196-97, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972) (in-court identification may be challenged by showing that the identification was tainted by improper pretrial identification procedures). Counsel was not ineffective in this regard.

D.

Petitioner also faults his attorney for not objecting to the suppression of evidence and an improper jury argument by the prosecutor. Although petitioner generally accuses the prosecutor of withholding "18-20 police reports" related to other robberies, as well as out-of-court statements by certain witnesses, he does not further elaborate on this claim. In particular, petitioner does not indicate what information is contained in the police reports and statements, or explain how that information was favorable to his defense. *See Hughes v. Johnson*, 191 F.3d 607, 629-30 (5th Cir. 1999), *cert. denied*, 120 S.Ct. 1003 (2000) (speculative and conclusory allegation that prosecutor withheld exculpatory evidence will not support claim for habeas relief). Because there is no evidence of an underlying *Brady* violation by the prosecutor, petitioner cannot show that his attorney was ineffective for failing to object to the suppression of evidence.

---

[3] Counsel objected to the out-of-court identification of petitioner by Guerra and another witness, Chris Laliberte. Those objections were overruled. (*See* SF-III at 99-101; SF-IV at 38-40).

Nor was counsel ineffective for failing to object when the prosecutor argued to the jury:

> It is the face of evil that is before you today that is embedded in the memories of Cornell Cooper, [Aleo] Guerra and Dan Hall. It is the face of Antonio Hicks, the face behind the greed, the face behind the terror, the face behind the pain and suffering inflicted upon Dan Hall.

(SF-VI at 13). Later in his argument, the prosecutor told the jury that petitioner, "the man behind that face," shot Hall with the rifle that was found in petitioner's apartment, and that a bullet recovered from the scene of the Auto Zone robbery "match[ed] the imprint, the unique imprint made by the firing pin on this rile, this specific rifle, to the exclusion of all other rifles." (*Id.* at 14-15). Contrary to petitioner's suggestion, there was nothing improper about these jury arguments. A careful review of the trial transcript reveals that the prosecutor's final argument either fairly summarized the evidence or drew reasonable deductions therefrom. Hall identified petitioner as the suspect who robbed his Auto Zone store at gunpoint. (*See* SF-IV at 78-79). Cooper and Guerra identified petitioner as the person they saw running from the scene of the One Stop robbery. (*See* SF-III at 63-64, 94). Witnesses also indicated that a live cartridge recovered from the Auto Zone store matched the rifle found in petitioner's apartment. (*See* SF-V at 77, 79-80, 114). Petitioner's unsupported and conclusory assertions do not merit federal habeas relief. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.), *cert. denied*, 121 S.Ct. 122 (2000).

E.

Petitioner argues that his attorney knew that eyewitness identification would be a major contested issue at trial, and should have hired an expert to testify on that subject. "The hiring of expert witnesses and the presentation of their testimony is a matter of trial strategy." *Colburn v. Cockrell*, 37 Fed.Appx. 90, 2002 WL 1021891 at *11 (5th Cir. May 9, 2002), *cert. denied*, 123 S.Ct. 516 (2002); *see also Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993). Here, counsel decided to

cross-examine Hall, Cooper, and Guerra about their identification of petitioner rather than rely on expert testimony.[4] That decision does not amount to ineffective assistance of counsel for at least two reasons. First, under both federal and Texas law, a trial court is not required to admit expert testimony on the issue of eyewitness identification. *See Cantu v. Collins*, 967 F.2d 1006, 1016 & n.18 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 3045 (1993) (citing cases). Had counsel retained an expert witness, it is not clear that the court would have permitted the expert to testify. Second, petitioner has not proffered the testimony of any expert witness who was willing to testify at trial, or shown that the absence of such testimony prejudiced his defense. *Id.* at 1016 (counsel was not ineffective for failing to retain an expert on the issue of eyewitness identification based on belief that cross-examination would be sufficient refute the accuracy of identification). This ground for relief should be overruled.

F.

In two grounds for relief, petitioner complains that his attorney did not object to the lack of notice by the prosecutor of his intent to introduce extraneous offense evidence, or request a contemporaneous limiting instruction when such evidence was admitted at trial. At issue is evidence regarding the Auto Zone robbery, which was committed eight days before the One Stop robbery. Counsel objected to the admission of this evidence as prejudicial, misleading, and confusing. (*See* SF-IV at 25-26). The state countered that the evidence was admissible to prove identity because of similarities between the two crimes. (*Id.* at 26-27). The court overruled petitioner's objection, admitted evidence of the Auto Zone robbery for the limited purpose of proving identity, and agreed

---

[4] Even petitioner admits that his attorney questioned Hall, Cooper, and Guerra in an attempt to impeach their identification testimony. (*See* Hab. Pet. at 12-13). Although petitioner criticizes counsel for asking only eight questions of Hall, 13 questions of Cooper, and 10 questions of Guerra on this subject, (*see id.*), whether petitioner received ineffective assistance of counsel is judged by the totality of cross-examination, not by the number of questions asked.

to instruct the jury to that effect. (*Id.* at 27). In its written charge on guilt-innocence, the court instructed:

> [I]f there is any testimony before you in this case regarding the defendant's having committed offenses, if any, other than the offense, if any, alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the identity, if any, of the defendant in connection with the offense, if any, alleged against him in the indictment and for no other purpose.

(St. App. Tr. at 65). On direct appeal, the state court held that the trial judge did not abuse his discretion in admitting evidence of the Auto Zone robbery. *Hicks*, 2006 WL 3479909 at *9. Petitioner now attacks the admission of this extraneous offense evidence under the guise of ineffective assistance of counsel by arguing that his attorney did not challenge the state's failure to provide reasonable notice of its intent to introduce evidence of the Auto Zone robbery, and failed to request an appropriate limiting instruction at the time the evidence was admitted.

Under Texas law, the state is required to provide "reasonable notice" of its intent "to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence[.]" TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (Vernon Supp. 2004); *see also* TEX. R. EVID. 404(b) ("reasonable notice" of intent to use extraneous offense evidence must be given before trial). However, the state is required to provide such notice only "[o]n timely request of the defendant[.]" TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g); *see also* TEX. R. EVID. 404(b). The purpose of this rule is to avoid unfair surprise and to enable the defendant to prepare to answer the extraneous offense evidence. *Hernandez v. State*, 176 S.W.3d 821, 823-24 (Tex. Crim. App. 2005); *Hayden v. State*, 66 S.W.3d 269, 272 (Tex. Crim. App. 2001). On August 5, 2004, more than six months before the case proceeded to trial, defense counsel filed

a motion to require the state to provide notice of its intent to introduce evidence of other crimes. (*See* St. App. Tr. at 43-44, 52). The motion was not heard by the court until April 12, 2005 -- the day of trial. At the conclusion of the hearing, the court ordered the state to provide defense counsel with notice of any and all extraneous offenses it intended to introduce into evidence. (*See* SF-III at 9). The prosecutor then served counsel with a notice listing 16 different crimes allegedly committed by petitioner, including the Auto Zone robbery. (*See* St. App. Tr. at 37-38). The judge observed that defense counsel had notice of all the extraneous offenses listed in the notice because "you have been appointed to represent [petitioner] on each of those cases prior to this trial[.]" (SF-III at 10). The prosecutor added:

> Just [to] make the Court aware of the State's intention regarding 404, use of extraneous offenses. One of the pending cases I will refer to as the Auto Zone robbery case is so similar in nature, we believe it could go to the identity of the defendant, similar weapon, similar bandana, similar mode of operation used by the perpetrator of the crime. So we intend to bring that in as an identity issue in this case.

(*Id.*). Not only did counsel have notice of the state's intent to rely on the Auto Zone robbery during its case-in-chief, but he knew the theory upon which the prosecutor intended to offer such evidence. Under these circumstances, there was no basis for objecting to a lack of notice by the state. *See Bratton v. Quarterman*, No. 3-07-CV-0633-K, 2009 WL 1044701 at *11 (N.D. Tex. Apr. 16, 2009), *COA denied*, No. 09-10498 (5th Cir. Jan. 4, 2010) (counsel not ineffective for failing to object to lack of notice of extraneous offense evidence "because he felt that he had received adequate notice of what the State intended to introduce, and there was nothing presented of which he was unaware").

Nor was counsel ineffective for failing to request a limiting instruction at the time the extraneous offense evidence was admitted. Although it is quite possible that the trial court would have given a contemporaneous limiting instruction to the jury, petitioner has not shown that counsel

performed deficiently by making a strategic decision to refrain from calling additional attention to this potentially damaging evidence. *Kessler v. Dretke*, 137 Fed.Appx. 710, 712, 2005 WL 1515483 at *1 (5th Cir. Jun. 28, 2005), *cert. denied*, 126 S.Ct. 1050 (2006), *citing Ali v. State*, 26 S.W.3d 82, 87 (Tex. App.--Waco 2000, no pet.); *see also Garza v. Director*, No. 9-08-CV-0115, 2009 WL 33428 at *5-6 (E.D. Tex. Jan. 6, 2009) (failure to request limiting instruction regarding extraneous offenses constitutes a tactical decision by counsel). This is particularly true in view of the fact that the trial judge included an appropriate limiting instruction in the jury charge. These grounds for relief should be overruled.

G.

Next, petitioner criticizes his attorney for allowing the prosecutor to use perjured testimony. At trial, Garland Police Officer William Ellstrom testified that two witnesses to the One Stop robbery -- Aleo Guerra and Chris Laliberte -- placed their initials on a picture of petitioner shown to them as part of a six-person photo line-up. (*See* SF-IV at 39, 40-41, 45). According to petitioner, this testimony is demonstrably false because "the same cursive styled 'J'-looking letter that appears on Chris's selected picture of Petitioner appears on both Chris's and Breck Laliberte's affidavit. Even to layman's eyes, it is obvious that the same person wrote the 'J'-looking letter on Chris's selected picture of Petitioner and his and Breck's affidavits." (Hab. Pet. at 16). This conclusory assertion, unsupported by any facts or expert handwriting analysis, does not merit habeas relief.

H.

Likewise, petitioner has failed to establish any basis for counsel to object to the testimony of Laura Fleming, a firearms examiner. Fleming testified that she had been a firearms examiner for a total of 10 years, had completed a two-year formal training program in firearms identification, and had testified as an expert more than 30 times. (*See* SF-V at 104-05). After explaining the

methodology for determining how a particular bullet was fired from a particular weapon, (*see id.* at 106-08), Fleming testified, in effect, that a live cartridge recovered from the Auto Zone store matched the rifle found in petitioner's apartment. (*Id.* at 114). Defense counsel objected to this testimony, which was based on a report prepared by another expert, because Fleming did not personally examine the firearm. (*Id.* at 110). The objection was overruled. (*Id.*). On cross-examination, counsel questioned Fleming about her methodology, establishing that the firearm was never test-fired, was not functioning when it arrived at the lab, and had missing parts. (*Id.* at 120-22). Although petitioner faults his attorney for failing to challenge Fleming's testimony on other grounds, such as her failure to testify about the qualifications of the firearms examiner who actually tested the rifle and "the reliability of the method used[,]" (*see* Hab. Pet. at 17), there is no basis for concluding that counsel was ineffective in this regard.

I.

Petitioner alleges that his attorney was ineffective for failing to object to a variance between the indictment and the jury charge, which "allowed the State to align the One Stop Robbery -- the crime for which Petitioner was on trial -- with the extraneous Auto Zone Robbery, when defense counsel was not prepared to defend Petitioner against the later offense." (*Id.* at 11). A comparison of the indictment and jury charge reveals no such variance. The indictment charged petitioner with the aggravated robbery of Aamir Masih on or about January 3, 2004. (*See* St. App. Tr. at 2). In its charge to the jury, the court stated:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 3rd day of January, 2004, in Dallas County, Texas, the defendant, ANTONIO MARQUEZ HICKS, did unlawfully then and there while in the course of committing theft, and with intent to obtain or maintain control of the property of AAMIR MASIH, hereinafter called complainant, the said property being current money of the United States of America, without the effective consent of the

> said complainant and with intent to deprive the said complainant of said property, did then and there intentionally or knowingly threaten or place the said complainant in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, then you will find the defendant guilty of aggravated robbery.

(*Id.* at 66). Nowhere in the charge was the jury led to believe that they could convict petitioner of the offense alleged in the indictment if the evidence showed he robbed Daniel Hall, the manager of an Auto Zone store, on December 26, 2003. To the contrary, the charge contained an appropriate instruction limiting the consideration of any extraneous offenses. (*Id.* at 65). Because there was no variance between the indictment and the jury charge, counsel was not required to make that frivolous objection. *See Clark*, 19 F.3d at 966.

### J.

Petitioner also faults his appellate lawyer for failing to brief the issue of whether trial counsel was ineffective for not requesting a contemporaneous limiting instruction on the permissible use of extraneous offense evidence. "The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.), *cert. denied*, 110 S.Ct. 419 (1989); *see also Jones*, 103 S.Ct. at 3313. Instead, counsel is obligated only to raise and brief those issues that are believed to have the best chance of success. *See Schaetzle*, 343 F.3d at 445; *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999). In order to prove ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal fell below an objective standard of reasonableness. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000), *citing Strickland*, 104 S.Ct. at 2064. This reasonableness standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id.*, *quoting Williamson*, 183 F.3d at 462.

Appellate counsel raised four nonfrivolous issues in a well-researched brief.[5] Although the brief did not include a claim that trial counsel was ineffective for not requesting a contemporaneous limiting instruction on the permissible use of extraneous offense evidence, petitioner has failed to show that his conviction would have been reversed had that claim been raised on direct appeal. *See Maki v. Dretke*, No. 3-03-CV-0011-D, 2004 WL 719146 at *8 (N.D. Tex. Apr. 1, 2004), *rec. adopted*, 2004 WL 1170476 (N.D. Tex. May 25, 2004). In fact, this court has determined that trial counsel was not ineffective for failing to request a contemporaneous limiting instruction. *See Jackson v. Quarterman*, No. 3-06-CV-0494-G, 2008 WL 58879 at *10 (N.D. Tex. Jan. 3, 2008), *aff'd*, 358 Fed. Appx. 585, 2009 WL 5102867 (5th Cir. Dec. 23, 2009) (appellate counsel was not ineffective for failing to appeal conviction on grounds that were considered and rejected by federal habeas court). This ground for relief should be overruled.

K.

Finally, petitioner contends that "cumulative errors" by defense counsel resulted in "a breakdown in the adversary process that rendered the result of [his] trial unreliable." (Hab. Pet. at 18). This argument implicates the cumulative error doctrine, which provides that "an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 887 (1999). Here, petitioner has failed to establish that the performance of his attorney was deficient in any way or that he was prejudiced thereby. As a result, relief is not available under the cumulative error doctrine. *See Miller*, 200 F.3d

---

[5] Appellate counsel focused his appeal on: (1) the admission of extraneous offense evidence; (2) trial counsel's failure to preserve that issue for appellate review; (3) the court's refusal to grant a mistrial due to an improper jury argument by the prosecutor; and (4) the admission of prejudicial photographs depicting the injuries sustained by Daniel Hall in the Auto Zone robbery. *See Hicks*, 2006 WL 3479909 at *1.

at 286 (petitioner who failed to demonstrate any error by trial counsel could not establish cumulative error).

## **RECOMMENDATION**

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 20, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE